AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | 8:25-SW-125 (MJK) |
| A silver iPhone Pro further described in Attachment A and currently located at 135 Trippany, Massena, New York 13662 | ) ) ) | Case No. _____ |
| | ) | USAO No. 2025R00394 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(v)(I) | Conspiracy to bring and harbor aliens |

The application is based on these facts:

See attached affidavit

☒ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Benjamin W. LaBaff, Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Teams *(specify reliable electronic means)*.

Date: 5/30/2025

_____
*Judge's signature*

City and state: Syracuse, New York

Hon. Mitchell J. Katz, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT

I, Benjamin W. LaBaff, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a silver iPhone Pro, further described in Attachment A (the "Subject Device"), currently in law enforcement possession, and the extraction from the Subject Device of electronically stored information described in Attachment B.

2.      I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), and assigned to the Massena Border Patrol Station. I have been a Border Patrol Agent since December 2008. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.      I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have

1

analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.    This affidavit is intended to show only that there is sufficient probable cause to believe that evidence of a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) will be found upon a search of the Subject Device. It does not set forth all my knowledge about this matter.

<u>**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**</u>

5.    The Subject Device is a silver iPhone Pro currently located at 135 Trippany Road, Massena, New York 13662. The applied-for warrant would authorize the forensic examination of the Subject Device to identify electronically stored data particularly described in Attachment B.

<u>**PROBABLE CAUSE**</u>

6.    On or about May 16, 2025, this Court signed a criminal complaint charging Haci Yurteri with the above-referenced crime. A copy of the complaint is attached as **Exhibit 1**, and the allegations in the narrative accompanying the complaint are incorporated by reference here.

7.    The Subject Device was seized from Yurteri's person incident to his arrest, and he consented to its search. Although Yurteri's consent should provide lawful authority for the search authority requested here, in an abundance of caution I am applying for a warrant.

8.    Based on my training and experience in this and other cross border criminal investigations I have been involved with, including individuals entering the United States illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS function to search for and map out potential crossing and pickup locations and to navigate to such places. An additional function of cellular telephones that can be utilized by

2

individuals crossing illegally includes the camera, and individuals will often take photos of where they are crossing the border illegally to send that information to someone supposed to pick them up at a nearby location.

9.      Additionally, smugglers and people being smuggled often communicate with each other using cellular phones and downloaded applications to coordinate smuggling events. Smartphones, such as the Device, also can be used to access social media. Based on my training, knowledge, and experience of alien smuggling, I know that social media platforms, such as WhatsApp, are often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

10.      The Device is currently in the lawful possession of the United States Border Patrol and has been since Yurteri's arrest. I seek this warrant to be certain that further examination of the Devices will comply with the Fourth Amendment and other applicable laws. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the possession of law enforcement as described above.

## TECHNICAL TERMS

11.      Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most

Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

        b.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

        c.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

        d.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e.    GPS:  A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f.    PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

12.    Based on my training, experience, and research, I know that cellular phones and GPS devices have capabilities that allow them to serve as a wireless telephone, digital camera,

5

portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

14.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

16.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

17.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.



Benjamin W. LaBaff
Border Patrol Agent
United States Border Patrol

I, the Honorable Mitchell J. Katz United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by Teams on May <u>30</u>, 2025 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____

Hon. Mitchell J. Katz
United States Magistrate Judge

8

# Exhibit 1

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| | ) | |
| YURTERI, Haci | ) | Case No.  8:25-MJ-148 (MJK) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of May 14, 2025, in the county of Franklin in the Northern District of New York the defendants violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(v)(I) | Conspiracy to Bring and Harbor Aliens |

This criminal complaint is based on these facts:

☒   Continued on the attached sheet.

_Complainant's signature_

U.S. Border Patrol Agent Benjamin LaBaff

_Printed name and title_

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   May 16, 2025

Digitally signed by Mitchell J Katz
Date: 2025.05.16 14:56:16 -04'00'

_Judge's signature_

City and State:   Syracuse, NY

Hon. Mitchell J. Katz, U.S. Magistrate Judge

_Printed name and title_

Continuation Sheet, *United States v.* **YURTERI, Haci**

This criminal complaint is based on these facts:

On Wednesday May 14, 2025, Border Patrol Agents (BPA) from the Massena Border Patrol Station received information from Swanton Sector Communications (Dispatch) that a concerned citizen observed three individuals walking westbound on State Route 37 in Fort Covington, New York.

With this knowledge, Massena Agents began to observe the Great View Motel in Fort Covington, New York. It is common for illegal aliens to cross the United States/Canada International boundary in Fort Covington, New York and walk westbound to the Great View Motel due to its proximity to the international boundary and lack of any other amenities in the surrounding area. In previous smuggling events, illegal aliens will rent a room at the Great View Motel until their means of transportation arrives to assist in their furtherance of entry into the United States.

At approximately 10:40 p.m., Massena Agents observed a minivan traveling northbound on State Route 37 towards Fort Covington, New York. Agents eventually observed the van, bearing New Jersey License plates, pull into the parking lot of the Great View Motel. It parked, and immediately three male subjects exited a hotel room with their luggage and entered the van.

At approximately 11:30 p.m., an immigration stop was conducted by Massena Border Patrol Agents on the vehicle. The driver, Haci YURTERI, said that he was a taxi and just picked up three individuals at the Great View Motel.

The three passengers of the vehicle admitted to the Agents that they were present in the United States illegally and that they were just picked up at the Great view Motel by the driver.

At approximately 11:35 p.m., all subjects were taken into custody and transported back to the Massena Border Patrol Station for further processing.

At the Massena Station, Yurteri admitted to agents that he was paid $300 to transport the three individuals further into the United States. He also admitted that the ride was not an Uber or taxi ride and that he was paid upfront by an individual who asked him to drive to the hotel to pick up three men otherwise unknown to the defendant.

In my training and experience, the defendant's actions are consistent with someone who knows, or acts in reckless disregard of the fact, that he is transporting aliens. This is because he drove a long way to the hotel, was paid in cash upfront, was not hired as an official Uber or taxi driver, and did not know the identities of his passengers or ask them anything about their status despite the proximity to the border.

## ATTACHMENT A

### Property to be Searched

The property to be searched is the silver iPhone Pro in the evidence bag depicted below,

currently located at 135 Trippany, Massena, New York 13662.



This warrant authorizes the forensic examination of the Devices for the purpose of identifying the

electronically stored information described in Attachment B.

9

# ATTACHMENT B

## Particular Things to be Seized

All records on the Device described in Attachment A that relate to a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) involving Haci Yurteri, including:

1.  Communications and messages concerning any transportation of aliens within the United States, including to/from data and message content.

2.  GPS or other location information showing routes of transportation to / from the area of the international border concerning transportation of aliens;

3.  Pictures or videos of locations involved in the transportation of aliens or the plan or attempt to transport aliens;

4.  Evidence of a motive, plan, and/or intent to transport aliens, including web search activity;

5.  Evidence that Yurteri conspired with anyone else to attempt to transport or to transport aliens within the United States; and

6.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

10